UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ATLANTIC MARITIME SERVICES, LLC | CIVIL ACTION |
| VERSUS | NO. 20-3097 C/W: 20-3099 |
| ECOPETROL AMERICA, LLC ET AL. | SECTION: "J"(1) |

Applies to: 20-3097, 20-3099

## ORDER AND REASONS

Before the Court are five *Motions to Vacate and Dissolve Writs of Sequestration or, Alternatively, for Release of Excess Seizure* filed by Intervenor-Defendant Talos QN Exploration LLC **(Rec. Docs. 73, 74)**, Defendant Ecopetrol America, LLC **(Rec. Doc. 77)**, Defendant Talos Energy Offshore LLC **(Rec. Doc. 75)**, and Defendants Ridgewood Katmai, LLC and ILX Prospect Katmai, LLC **(Rec. Doc. 80)**. Plaintiff Atlantic Maritime Services, LLC filed a consolidated opposition to all of Defendants' motions (Rec. Doc. 83), and Defendants filed replies (Rec. Docs. 88, 89, 90).

Having considered the motions and legal memoranda, the parties' oral arguments, the record, and the applicable law, the Court finds that the motions to vacate and dissolve the writs of sequestration should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This consolidated matter arises from two offshore oil leases for which Plaintiff Atlantic Maritime Services, LLC alleges that it "furnished goods, equipment, supplies, and services" in 2020. (Rec. Doc. 50, at ¶ 9). Plaintiff performed these

1

drilling services pursuant to a contract between Plaintiff and the designated operator on the two leases at the time, Fieldwood Energy LLC ("Fieldwood"). Subsequently, Fieldwood filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas, and Plaintiff alleges that it is still owed the following principal amounts: (1) $5,824,743.68 for services performed on mineral lease OCS-G-28030 located in the Mississippi Canyon Area, Block 948, of the Outer Continental Shelf adjacent to the coast of Louisiana ("the Gunflint Lease"), a lease in which Defendants Ecopetrol America, LLC ("Ecopetrol") and Talos Energy Offshore LLC ("TEO"), along with Intervenor-Defendant Talos QN Exploration LLC ("Talos QN"), are interest owners; and (2) $7,111,706.55 for services performed on mineral lease OCS-G-34536 located on the Green Canyon Area, Block 40 ("the Katmai Lease"), in which Defendants Ridgewood Katmai, LLC ("Ridgewood") and ILX Prospect Katmai, LLC ("ILX"), again with Intervenor-Defendant Talos QN, are working interest owners.

Because the two mineral leases are located on the Outer Continental Shelf, they are governed by the Outer Continental Shelf Lands Act ("OCSLA"). 43 U.S.C. §§ 1331–1356c. OCSLA provides that federal law extends to "the subsoil and seabed of the outer Continental Shelf," in addition to "artificial islands on the outer Continental Shelf," "installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources," and "any such installation or other device (other than a ship or vessel) for the purpose of transporting or transmitting such resources."

43 U.S.C. § 1333(a)(1)(A). Further, "the civil and criminal laws of each adjacent State" are declared to be surrogate federal law governing the "portion . . . of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf," but only "[t]o the extent that they are applicable and not inconsistent" with federal law. 43 U.S.C. § 1333(a)(2)(A). Based on Plaintiff's understanding that Louisiana is the state adjacent to both mineral leases at issue, Plaintiff sought to take advantage of the protections afforded by the Louisiana Oil Well Lien Act ("LOWLA") concerning the amounts it was owed by Fieldwood. Accordingly, Plaintiff took steps to preserve its LOWLA privileges as to third persons.

It was in August of 2020 that Fieldwood and thirteen affiliated debtors filed for Chapter 11 bankruptcy protection in the Southern District of Texas. Because Plaintiff could not recover the amounts it was owed from Fieldwood, the operator on both leases, Plaintiff sought to recover the amounts from the working interest owners ("WIOs") in the leases. To this end, Plaintiff initiated two *in rem* actions (pertaining to the two leases) in this Court on November 13, 2020, against the WIOs, Defendants Ecopetrol, Ridgewood, and ILX.[1] Shortly thereafter, Ecopetrol, Ridgewood, and ILX filed Notices of Bankruptcy into the records, and the Court issued automatic stays of both cases. In April of 2021, Fieldwood sought a declaratory judgment from the Bankruptcy Court holding that Plaintiff's LOWLA privileges would be extinguished

---

[1] Plaintiff later named TEO as a defendant in its first amended complaint, which was filed in July of 2021.

by Fieldwood's bankruptcy plan. Also during this time, the Bankruptcy Court confirmed Fieldwood's Eighth Amended Joint Chapter 11 Plan, under which QuarterNorth, which is now Talos QN Exploration LLC, purchased Fieldwood's assets.

In February of 2022, the Bankruptcy Court issued a permanent injunction against Plaintiff's *in rem* actions against Defendants, the WIOs, an order which Plaintiff appealed and the Fifth Circuit reversed. The Fifth Circuit held that "Fieldwood's reorganization plan clearly does not render Fieldwood's obligation to Atlantic extinct; it merely discharges Fieldwood's liability for the debt," thus concluding that "the plan did not extinguish Atlantic's LOWLA privileges on the working-interest owners' [i.e., Ecopetrol's, TEO's, Ridgewood's, and ILX's] property." *In re Dynamic Offshore Res. NS, L.L.C.*, No. 23-20218, 2025 WL 1651901, at *6 (5th Cir. June 11, 2025). Pursuant to the Fifth Circuit's decision, the stays in the cases before this Court were lifted, and the suits were consolidated. On December 4, 2025, Plaintiff filed *ex parte* motions for writs of sequestration under LOWLA, which the Court granted. On December 12, Talos QN moved to intervene in the consolidated action. This very long and winding road brings us to the instant motions, whereby Defendants seek to have the writs of sequestration that were issued in December 2025 vacated and dissolved.

Prior to filing suit against Defendants, Plaintiff alleges that it perfected and preserved privileges on these oil leases pursuant to LOWLA. La. Stat. Ann. §§ 9:4861–4880. Plaintiff did so by first filing statements of privilege in the mortgage

4

records of all Louisiana parishes that are adjacent to the two offshore leases; these statements were filed between July 16, 2020, and July 23, 2020. Under LOWLA, Defendants Ecopetrol, TEO, Ridgewood, and ILX are considered third persons because they are WIOs who were not in contractual privity with Plaintiff for the goods and services provided. LOWLA provides that a "privilege shall . . . cease to have effect against a third person unless the claimant institutes an action for the enforcement of the privilege within one year after the date of the filing of the statement of privilege or financing statement." La. Stat. Ann. § 9:4865(B). Therefore, to preserve its privileges, Plaintiff instituted two *in rem* actions—one naming Ecopetrol as Defendant and the other against Ridgewood and ILX—on November 13, 2020, and these matters were later consolidated, as explained above.

## LEGAL STANDARD

Rule 64 of the Federal Rules of Civil Procedure provides that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment," and one such remedy available under the rule is "sequestration." Fed. R. Civ. P. 64. Under Louisiana law, a party who holds a security interest in property, such as a privilege, may have that property seized under a writ of sequestration "if it is within the power of the defendant to conceal, dispose of, or waste the property or the revenues therefrom . . . during the pendency of the action." La. Code Civ. Proc. art. 3571.

A writ of sequestration does not effect a transfer of title to the property, but instead, it is a conservatory writ that is "intended to preserve property pending the outcome of a judicial proceeding." *Grantt Guillory Enters., Inc. v. Quebedeaux*, 2012-931 (La. App. 3 Cir. 2/6/13), 110 So. 3d 182, 189. For a writ of sequestration to issue, a claimant must meet strictly construed pleading requirements that are provided in Louisiana Code of Civil Procedure article 3501:

> A writ of attachment or of sequestration shall issue only when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts shown by the petition verified by, or by the separate affidavit of, the petitioner, his counsel or agent.

La. Code Civ. Proc. art. 3501. Furthermore, when the petitioner "alleges adequate and valid grounds to support it," the issuance of a writ of sequestration will be legal even if those grounds "are later disproved." *Rocket Indus., Inc. v. S. Tire & Supply, Inc.*, 706 F.2d 561, 563 (5th Cir. 1983).

Additionally, under Louisiana law, writs of sequestration may issue upon *ex parte* application, without notice to the debtor or an opportunity for the debtor to be heard. The United States Supreme Court has concluded that this proceeding does not violate the U.S. Constitution's guarantee of due process, in part because Louisiana law provides procedures whereby the debtor may seek to dissolve the writ or "regain possession by filing his own bond." *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 604–07 (1974). The Louisiana Code of Civil Procedure provides the mechanism by which a debtor may seek dissolution of a writ of sequestration. Article 3506 explains that the "defendant by contradictory motion may obtain the dissolution of a writ of attachment

or of sequestration, unless the plaintiff proves the grounds upon which the writ was issued." La. Code Civ. Proc. art. 3506. Accordingly, when a defendant files a motion to dissolve a writ of attachment, the plaintiff is entitled to an evidentiary hearing to prove the grounds upon which the writ was issued. *Pearl River Navigation, Inc. v. Imperial Petroleum, Inc.*, No. 07-9616, 2008 WL 2743756, at *2 (E.D. La. July 9, 2008) (Africk, J.) ("Once defendant has moved for dissolution, '[t]he plaintiff . . . is entitled to an evidentiary hearing in order to meet its statutory burden of proof before a writ of sequestration may be dissolved, and a trial court commits legal error if it dissolves such a writ ex parte.'"). Further, when a court dissolves a writ of sequestration that was wrongfully issued, the court has discretion to award damages and attorney's fees. La. Code Civ. Proc. art. 3506. Presumably, however, the plaintiff must make the requisite showing for the writ of sequestration prior to its issuance because "the remedy is a harsh one," and therefore, "the pleading requirements for a writ of sequestration are strictly construed." *Grantt Guillory*, 110 So. 3d at 189.

In this case, Plaintiff claims privileges over specified interests and properties of Defendants pursuant to LOWLA, La. Stat. Ann. § 9:4861 *et seq.*, an act whose purpose is "to protect those . . . who contribute labor, services, and equipment to the drilling of wells from the default of those who engage them." *Guichard Drilling Co. v. Alpine Energy Servs., Inc.*, 94-1275 (La. 7/3/95), 657 So. 2d 1307, 1312 (citations omitted). Based on this purpose, the legislature decided to place "the risk of the contractor's insolvency or failure to pay on those with an interest in the lease." *Id.* at 1312–13. Moreover, "[i]t is well settled under the Oil Well Lien Act that the privilege

created by La. R.S. 9:4861 attaches to all property listed in the statute, regardless of ownership, and requires no contractual relationship between the supplier of labor, service, or equipment and the owner of the lease or equipment." *Id.* at 1312 (citations omitted).

Property subject to the privilege created by LOWLA includes, but is not limited to, the following:

(1) The operating interest under which the operations giving rise to the claimant's privilege are conducted together with the interest of the lessee of such interest in a:

    (a) Well, building, tank, leasehold pipeline, and other construction or facility on the well site.

    (b) Movable on a well site that is used in operations, other than a movable that is only transiently on the well site for repair, testing, or other temporary use.

    (c) Tract of land, servitude, and lease described in R.S. 9:4861(12)(c) covering the well site of the operating interest.

La. Stat. Ann. § 9:4863(A)(1). Additionally, the LOWLA privilege attaches to any "[d]rilling or other rig located at the well site" when that rig is owned by the operator or contractor in privity with the claimant; the "interest of the operator and participating lessee in hydrocarbons produced from the operating interest and the interest of a non-participating lessee in hydrocarbons produced from that part of his operating interest subject to the privilege"; and the "proceeds received by, and the obligations owed to, a lessee from the disposition of hydrocarbons subject to the privilege." La. Stat. Ann. § 9:4863(A)(2)–(4).

LOWLA provides for the enforcement of a lien, or privilege, through a writ of sequestration. La. Stat. Ann. § 9:4871. The privilege under LOWLA is created as a matter of law, but privilege holders must take certain steps to preserve the privilege and make it effective as to third parties. *See* La. Stat. Ann. §§ 9:4864, 9:4865. Specifically, the claimant must (1) file a statement of privilege in the mortgage records of the parish(es) adjacent to the offshore mineral lease within 180 days of last performing services at the well site; (2) institute an action to enforce the privilege within one year of the date when the statement of privilege was filed; and (3) file a notice of *lis pendens* in the mortgage records of the appropriate parish(es) within thirty days of instituting the action. La. Stat. Ann. § 9:4865.

## DISCUSSION

Defendants in this matter filed separate motions to vacate and dissolve the writs of sequestration, as did Intervenor-Defendant and operator on the leases, Talos QN Exploration LLC. Because Defendants make identical arguments, with only one exception,[2] the Court has consolidated the motions for consideration.

### A. Defendants' Argument That Consolidated Complaint Fails to Allege Applicability of Louisiana Law

To support their motions to vacate and dissolve the writs of sequestration, Defendants first argue that in the consolidated complaint, Plaintiff fails to allege, much less establish, that Louisiana law would apply as surrogate federal law to these oil leases on the Outer Continental Shelf. More specifically, Defendants appear to

---

[2] TEO argues that Plaintiff did not name TEO as a defendant within a year of filing its statements of privilege, and that therefore, Plaintiff's LOWLA privilege as to TEO's working interest in the lease was not properly preserved.

challenge the contention that "Louisiana is the 'adjacent' state under OCSLA" (Rec. Docs. 73-1, at 10; 74-1, at 10). At the very least, Defendants claim that Plaintiff did not allege sufficient facts or conduct the necessary analysis in the consolidated complaint to make this showing and that this alleged deficiency invalidates the writs of sequestration that this Court issued. Defendants conclude this section of their memoranda with the following conclusory statement: "Because Atlantic has not and cannot substantiate its cursory assertion of adjacency (the threshold issue for whether LOWLA applies at all), the Writs of Sequestration must be dissolved." *Id.*

Defendants do not directly dispute or deny that Louisiana is the coastal state adjacent to the oil leases for the purposes of OCSLA. Instead, they simply allege that Plaintiffs failed to plead adjacency sufficiently. However, in the verified consolidated complaint, Plaintiff alleged that for both of the leases at issue (the Gunflint Lease and the Katmai Lease), Plaintiff filed its statements of privilege (i.e., lien affidavits) into the mortgage records "of the Louisiana parishes *adjacent*" to the offshore leases. (Rec. Doc. 50, at ¶¶ 16, 22 (emphasis added)). Further, Plaintiff stated that it also recorded notices of *lis pendens* "in the mortgage records of the Louisiana parishes adjacent" to the two leases, which is a required step to preserve the LOWLA privileges against third persons. *Id.* at ¶¶ 20, 25. The Court finds that both of these statements constitute allegations that Louisiana is the coastal state adjacent to the Gunflint and Katmai Leases.

Defendants cite no authority, and the Court has not been able to find any, to support their proposition that in order to later protect the plaintiff's LOWLA privilege

through a writ of sequestration, a plaintiff must allege adjacency by fully analyzing the four factors that the Fifth Circuit outlined in *Snyder Oil Corp. v. Samedan Oil Corp.* in the complaint. *Snyder Oil Corp. v. Samedan Oil Corp.*, 208 F.3d 521, 524 (5th Cir. 2000). The Court does not believe that LOWLA or OCSLA requires plaintiffs to plead with that level of particularity. Moreover, in its opposition to Defendants' motions to vacate and dissolve the writs of sequestration, Plaintiff cites specific evidence to demonstrate that Louisiana is the adjacent state to both leases for OCSLA purposes. First, Intervenor-Defendant Talos QN Exploration LLC previously conceded that Louisiana is the adjacent state to the Katmai Lease in Fieldwood's bankruptcy proceeding. In its opposition to Atlantic's motion to dismiss the adversary proceeding, QuarterNorth Energy LLC, now Talos QN Exploration LLC, unequivocally stated that "the Debtors agree that GC-40 [the Katmai Lease] is 'adjacent to' Louisiana." *Fieldwood Energy LLC v. Atlantic Maritime Servs. LLC*, No. 20-03476, Rec. Doc. 36, at ¶ 58 (Bankr. S.D. Tex. May 25, 2021). Therefore, Talos QN Exploration is judicially estopped from arguing otherwise in this proceeding.

On the other hand, Talos QN Exploration, for one, has not previously conceded that the Gunflint Lease (MC-498) is adjacent to Louisiana. Regardless, though, the evidence points to this conclusion. In *Snyder Oil Corp. v. Samedan Oil Corp.*, the Fifth Circuit explained the four types of evidence a court should consider in making an adjacency determination: "(1) geographic proximity; (2) which coast federal agencies consider the subject platform to be 'off of'; (3) prior court determinations; and (4) projected boundaries." *Snyder Oil Corp.*, 208 F.3d at 524. Here, both

Bankruptcy Judge Marvin Isgur and Plaintiff have established that the Gunflint Lease is in closer geographic proximity to Louisiana than to Mississippi or Alabama; specifically, the offshore lease is located 59 miles from Louisiana, while it is 146 miles from Mississippi and 151 miles from the Alabama coast. Therefore, the first factor weighs in favor of Plaintiff's position.

Further, the Gunflint Unit Agreement and the Bureau of Safety and Environmental Enforcement's Certification-Determination both identify this lease as being "offshore Louisiana," suggesting that factor two also supports the finding that Louisiana is the state adjacent to the Gunflint Lease. (Rec. Doc. 83-1, at 30, 31). Third, Plaintiff indicates that courts have not made prior determinations regarding the adjacent state to the Gunflint Lease. However, Plaintiff identifies cases in which courts have concluded that OCS blocks even farther east than the Gunflint Lease are adjacent to Louisiana. *See, e.g.*, *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, 148 F. Supp. 3d 563, 565 (E.D. La. 2015) (finding that the Macondo well, which was northeast of the Gunflint lease, was adjacent to Louisiana). Finally, the Minerals Management Service administrative map places the Gunflint Lease within the projected boundaries of Louisiana, and the Bureau of Ocean Energy Management (BOEM) has adopted this map. Based on this evidence, three of the four factors weigh in favor of finding that Louisiana is the adjacent state to the Gunflint Lease for purposes of OCSLA, and therefore, the Court concludes that Louisiana is the adjacent state to both leases at issue in this case. Accordingly, Louisiana law would apply to these leases as surrogate federal law under OCSLA.

**B. Defendants' Argument That Plaintiff Failed to Preserve LOWLA Privileges**

Next, Defendants maintain that even if Louisiana law, and hence LOWLA, do apply, Plaintiff cannot enforce its LOWLA privileges because it failed to preserve them. In the statements of privilege Plaintiff filed in the Louisiana parishes adjacent to the two leases, Plaintiff stated that the "privilege is claimed upon the operating interest of Fieldwood Energy LLC." (*See, e.g.*, Rec. Doc. 50-1, at 3). Because Plaintiff referred specifically to "the operating interest of Fieldwood Energy," Defendants contend that Plaintiff cannot seek to enforce its privileges against Defendants Ecopetrol, TEO, Ridgewood, and ILX, who are the other working interest owners in the two leases. Defendants fail to note, however, that the statements of privilege also identify the wells to which the privileges extend. In the section of the statements of privilege entitled "Description of the Operating Interest Upon Which the Privilege is Claimed, or of the Well with Respect to Which the Operations Giving Rise to Claimant's Privilege were Performed," Plaintiff wrote, "[t]he privilege is claimed upon the operating interest of Fieldwood Energy LLC . . . and **Well #1** [or **Well #4**, depending on the lease]." *See, e.g.*, *id.*

Furthermore, it is well established that a LOWLA privilege extends to the entire lease, including the interests of non-operators who hold working interests in the lease. *Guichard*, 657 So. 2d at 1312 ("Also, it has been uniformly held that the privilege is not restricted to proceeds of the well actually drilled but rather exists on the entire lease as a whole." (citing *JHJ Ltd. I v. Chevron U.S.A., Inc.*, 806 F.2d 82, 82 (5th Cir. 1986)); Patricia H. Chicoine, *Lien on LOWLA; It's a Privilege: Recent*

*Revisions to the Louisiana Oil Well Lien Act*, 57 La. L. Rev. 1133, 1145–46 (1997) (contrasting LOWLA with Texas's mineral lien, which attaches only to the contracting lease owner's interest, and explaining that under LOWLA, "the interests of the operator and both participating and non-participating lessees are attached").

LOWLA specifically outlines the information a statement of privilege must contain. Relevant here, the statement of privilege must include a "description of the operating interest upon which the privilege is claimed, *or of the well with respect to which the operations giving rise to the claimant's privilege were performed.*" La. Stat. Ann. § 9:4868(A)(5) (emphasis added). In this case, Plaintiff included both a description of the operating interest and of the wells where Plaintiff performed services giving rise to the LOWLA privileges, in addition to providing the lease numbers and the names of the fields where the leases are located. Further, Plaintiff's statements of privilege assert that the privileges are claimed over Fieldwood's operating interest *and* the specific wells, so the description is conjunctive, not disjunctive. Therefore, Plaintiff complied with the statutory requirement. Further, the statute explicitly provides that

> A statement of privilege is not invalid if it fails to contain all of the information required by Subsection A of this Section, but fairly apprises the recipient or person against whom the privilege is asserted of the privilege claimed and of the operating interest, hydrocarbons, or other property upon which the privilege is claimed.

La. Stat. Ann. § 9:4868(E). By referring to the specific wells and leases for which Plaintiff provided goods and services, Plaintiff fairly apprised Defendants of the existence of the privileges.

Under the public records doctrine, Louisiana law mandates that interests in property, such as LOWLA privileges, must be recorded to have effect against *third persons*.[3] Here, Defendants are third persons because they were not in contractual privity with Atlantic Maritime for the services performed. It is well established that the "primary purpose of the public records doctrine is the protection of third persons from *unrecorded* interests." *Ely Edwards Enters., Inc. v. Pontchartrain Park CDC Real Est. Holdings, LLC*, 2021-0623 (La. App. 4 Cir. 4/13/22), 338 So. 3d 50, 53 (emphasis added) (citing *Cimarex Energy Co. v. Mauboules*, 2009-1170, p. 18 (La. 4/9/10), 40 So. 3d 931, 943). Plaintiff complied with the statutory requirements in recording its LOWLA privileges, and therefore, these privileges had effect against third persons. In this case, Defendants had both actual and constructive knowledge of Plaintiff's LOWLA privileges,[4] and Plaintiff specifically indicated which wells on which leases the privileges extended to. Therefore, the Court rejects Defendants' argument that Plaintiff failed to preserve its privileges.

TEO makes a separate argument that Plaintiff failed to preserve its LOWLA privilege against TEO's working interest in the Gunflint Lease because Plaintiff did not institute an action against TEO within a year of filing the statements of privilege. Plaintiff has established that it filed statements of privilege for the Gunflint Lease

---

[3] Plaintiff's counsel pointed out in oral argument that recordation is required only as to third persons because a privilege does not have to be recorded or preserved to affect a party with whom the LOWLA claimant is in contractual privity. In other words, Plaintiff would not have needed to record the privilege for it to have effect against Fieldwood; the entire purpose of recordation is to provide notice to third persons.

[4] Defendants had constructive knowledge under Louisiana's public records doctrine because Plaintiff's statements of privilege were filed into the mortgage records of the parishes adjacent to the offshore leases. Additionally, Defendants conceded that they had actual knowledge of the work Plaintiff did on the leases when they acknowledged that they paid Fieldwood their proportionate shares of the cost.

(MC-948) in Orleans, St. Tammany, St. Bernard, and Plaquemines Parishes on July 16, 2020. Plaintiff also alleges that it filed its first amended complaint naming TEO as a defendant on July 14, 2021, which would be timely. TEO disputes this filing date, however, because the Clerk's Office marked the July 14th filing as deficient—in part because Plaintiff had not sought leave of court to file the amended complaint—and required Plaintiff to refile it within seven days. Plaintiff moved for leave of court on July 16, and the Court granted leave to file the amended complaint on July 20. Therefore, the amended complaint was not officially filed into the record until July 21, 2021.

The Supreme Court of Louisiana has established that an action to enforce a LOWLA privilege is by definition an *in rem* action, and because such an action on the privilege is "effective against the whole of the property," *any* action on the lien serves "to preserve the lien as to the whole of the property." *Guichard*, 657 So. 2d at 1318. In other words, because Atlantic took the necessary steps to preserve its LOWLA privileges as to the Gunflint Lease—i.e., filing statements of privilege and instituting an *in rem* action to enforce the privileges against Ecopetrol within a year of recordation—it is irrelevant that Plaintiff did not name TEO as a defendant until later.

### C. Defendants' Argument That the Writs of Sequestration Are Incompatible with Governing Federal Law

Next, Defendants argue that the writs of sequestration issued by the Court are incompatible with controlling federal law because the writs require a transfer of the federal lease interests, which Defendants claim must be approved by the Secretary of

the Interior through the Bureau of Ocean Energy Management (BOEM). This is simply not the case. As explained in the Court's previous Order and Reasons granting Plaintiff's motions for writs of sequestration (Rec. Doc. 55), a writ of sequestration is a conservatory mechanism that operates to preserve the status quo. *Grantt Guillory*, 110 So. 3d at 189. In other words, a writ of sequestration maintains the current ownership of the property in dispute and simply seeks to preserve the property pending the outcome of the litigation; it does not transfer ownership of the sequestered property interest. *Express Supply & Steel, LLC v. Cox Operating, LLC*, No. 23-154, 2023 WL 172045, at *1 (E.D. La. Jan. 12, 2023) (Vance, J.). Because a writ of sequestration does not transfer ownership of the sequestered property, the approval of the Secretary of the Interior is not required. For these reasons, the Court rejects Defendants' argument that the writs of sequestration are incompatible with governing federal law.

## D. Defendants' Argument That Plaintiff's Privileges Were Extinguished by Commingling

Fourth, Defendants urge the Court to vacate and dissolve the writs of sequestration because they claim that Plaintiff's privileges over the hydrocarbons and their proceeds have become extinguished due to commingling. Louisiana Revised Statutes Section 9:4869 explains the way in which LOWLA privileges over hydrocarbons and their proceeds may be extinguished. First, the "privilege over hydrocarbons is extinguished when the hydrocarbons have become so commingled with, processed with, or transformed into other hydrocarbons or substances not subject to the privilege as to no longer be reasonably identifiable." La. Stat. Ann.

§ 9:4869(A)(2). Additionally, the LOWLA "privilege over the proceeds from the disposition of hydrocarbons attributable to an interest of the lessee is extinguished when the proceeds have become so commingled with other funds not subject to the privilege as to no longer be reasonably identifiable." La. Stat. Ann. § 9:4869(A)(3).

Defendants claim that the hydrocarbons and proceeds over which Atlantic Maritime's privileges extend have become so commingled with Talos QN Exploration's hydrocarbons and proceeds as to extinguish the privileges. Plaintiff responds by saying first that Defendants have the burden to prove that the hydrocarbons and proceeds have become commingled to the point that they are no longer reasonably identifiable. More significantly, however, Plaintiff points out that the LOWLA privilege does not extend to the hydrocarbons themselves, but instead to the WIOs' interests in those hydrocarbons. The statute reads in part, "the privilege given by R.S. 9:4862 is established over . . . (3) The interest of the operator and participating lessee in hydrocarbons produced from the operating interest and the interest of a non-participating lessee in hydrocarbons produced from that part of his operating interest subject to the privilege." La. Stat. Ann. § 9:4863(A)(3). Stated another way, the statute entitles Plaintiff to a privilege over each working interest owner's proportional share of the hydrocarbons and proceeds, which means that Plaintiff's privilege would extend to Ecopetrol's, TEO's, Ridgewood's, and ILX's interests in the "hydrocarbons produced from that part of [their] operating interest subject to the privilege," but it would not extend to Talos QN's interest, which it purchased from Fieldwood as part of the bankruptcy proceedings.

Moreover, LOWLA addresses specifically the privilege that is granted over a non-operator's interest—either a "non-participating lessee" or a "participating lessee"—in hydrocarbons and proceeds. LOWLA defines a "non-participating lessee" as a "lessee who is neither an operator nor a participating lessee." La. Stat. Ann. § 9:4861(9). A "participating lessee," on the other hand,

> is a lessee who is not the operator, but who is personally bound by contract to the operator to pay or reimburse the operator for any part of the obligation secured by the privilege or for any part of the price of the contract of the contractor from whom the operations giving rise to the claimant's privilege emanate.

La. Stat. Ann. § 9:4861(8). Based on Defendants' pleadings, the WIOs' obligations to the operator were governed by Unit Operating Agreements, under which they were contractually obligated to reimburse the operator, formerly Fieldwood, for their proportionate shares of the costs of Atlantic Maritime's services. Under these facts, Defendants would be participating lessees, which means that Plaintiff's privilege over their interests would not be limited at all by the statute. In slight contrast, a non-participating lessee's interest is still subject to the LOWLA privilege, but the LOWLA privilege would be limited to "the unit boundaries," meaning that the privilege would "not extend to the non-participating lessee's interest in other units in which the lease may participate or in other wells that may be located on the lease." Patricia H. Chicoine, *Lien on LOWLA; It's a Privilege: Recent Revisions to the Louisiana Oil Well Lien Act*, 57 La. L. Rev. 1133, 1141 (1997).

In sum, Plaintiff's LOWLA privileges, when properly preserved, extended not only to the operator's interest in the leases, but also to those interests held by both

participating and non-participating lessees. This is because the sole purpose of LOWLA is to protect contractors, laborers, and employees by creating privileges that extend beyond the interest of the operator who contracted with them to the entire lease that was benefitted by their work.

### E. Defendants' Argument That the Writs Are Overly Broad

As their penultimate argument, Defendants claim that the writs of sequestration are "overly broad, vague, and impossible to implement or enforce" (Rec. Doc. 73-1, at 19), and they proceed to give four examples to illustrate this point. To summarize the arguments, some of which have already been made, Defendants claim that it is not possible to enforce the LOWLA privileges and writs of sequestration in a way that does not affect the Debtor's successor's (Talos QN's) interest in the leases. Then, Defendants reiterate that the hydrocarbons and proceeds have become too commingled as to be reasonably identifiable, and that consequently, the LOWLA privileges have been extinguished.

Third, Defendants claim that the writs "are overly broad—and inconsistent with LOWLA—because they direct the U.S. Marshal to seize '[a]ny rig owned by [the WIO Defendants] located at the well site[.]'" *Id.* at 20. The Court agrees with Defendants on this point. The 1995 revision of LOWLA restricted the privilege over "[d]rilling or other rig[s]" to those "owned by the operator or by a contractor from whom the activities giving rise to the privilege emanate." La. Stat. Ann. § 9:4863(A)(2). The writs the Court issued, on the other hand, ordered any rig owned by one of the Defendants (Ecopetrol, TEO, Ridgewood, or ILX) to be sequestered. (Rec.

Docs. 57, at 1; 58, at 1; 60, at 1; 61, at 1). This point is moot, however, because in their motions, Defendants explain that there are no rigs located at the well sites to be sequestered. Finally, Defendants claim that the writs are overly broad "because they are not limited to the value of Atlantic's claim." *Id.* This argument appears plausible. However, the writs of sequestration merely preserve the property pending litigation, and Plaintiff will not be permitted to recover more than the amounts to which it has a valid claim.

Defendants focus heavily on the argument that the hydrocarbons and proceeds therefrom have become too commingled as to be reasonably identifiable, and that hence, Plaintiff's LOWLA privileges have been extinguished. However, in the alternative, Defendants ask the Court to release any sequestered property in excess of Atlantic's claims. Suggesting that the sequestered property could be divided based on value severely undercuts Defendants' argument that the property has become too commingled. The Court appreciates Defendants' concern that the sequestered property's value may surpass the value of Plaintiff's claims, but Defendants should be reassured that in no case will Plaintiff's recovery exceed any legitimate claims Plaintiff is ultimately determined to have.

### F. Defendants' Argument That Writs of Sequestration Require Security

Lastly, Defendants claim that the writs of sequestration are invalid because Plaintiff did not provide the required security. Generally, the Louisiana Code of Civil Procedure provides that an "applicant for a writ of sequestration shall furnish security for an amount determined by the court to be sufficient to protect the

defendant against any damage resulting from a wrongful issuance, unless security is dispensed with by law." La. Code Civ. Proc. art. 3574. In this case, security is dispensed with by law because LOWLA explicitly states that under the statute, a "claimant may enforce his privilege by a writ of sequestration, without the necessity of furnishing security." La. Stat. Ann. § 9:4871. Therefore, Defendants' argument to the contrary is meritless.

### G. Defendants' Request for Alternative Relief

Alternatively, Defendants request that the Court release the sequestered property whose value exceeds Plaintiff's claims. Under Louisiana Code of Civil Procedure article 3505, when "the value of the property seized under a writ of attachment or of sequestration exceeds what is reasonably necessary to satisfy the plaintiff's claim, the defendant by contradictory motion may obtain the release of the excess." La. Code Civ. Proc. art. 3505. The Court finds two issues with this argument.

First, Defendants claim that "[t]here is no question that the value of the property seized under the Writ of Sequestration 'exceeds what is reasonably necessary to satisfy' Atlantic's claim." (*E.g.*, Rec. Doc. 73-1, at 22). In the next paragraph, however, Defendants state that the proceeds on production from the two wells at issue "would overwhelm the principal amount of Atlantic's claim . . . within a matter of months." (Rec. Doc. 73-1, at 23). It is unclear to the Court whether the currently sequestered property's value exceeds the value of Plaintiff's claims or whether it will do so in the next several months. Defendants would need to clarify their position before the Court could act on this alternative request.

Second, under LOWLA, Plaintiff is statutorily entitled not only to the amounts of the obligations owed, but also to interest due on these amounts, the "cost of preparing and filing the statement of privilege and notice of pendency of action," and reasonable attorney fees "not to exceed ten percent." La. Stat. Ann. § 9:4862(B). Because of this statutory entitlement, the Court would first need to calculate the full value of Plaintiff's claims (including interest and costs) before the Court could release what Defendants claim is excess sequestered property.

The Court is sympathetic to Defendants' claim that they previously paid Fieldwood their proportionate shares for Atlantic Maritime's drilling services and that if Atlantic were to prevail in this case, they would have to pay for these services twice.[5] However, the situation in the instant case is precisely the problem that the Louisiana Legislature sought to solve when it enacted LOWLA, which is intended to provide "broad and far reaching protection to providers of labor . . . in conjunction with the drilling of oil wells." *Guichard*, 657 So. 2d at 1311. The Court previously found that Plaintiff had fulfilled all statutory requirements for the writs of sequestration to issue, and the Court affirms that finding today.

---

[5] During oral argument, Plaintiff's counsel stated that under Talos QN's joint operating agreements with Defendants, Talos QN, as operator on the two leases, has indemnity obligations to Defendants. Defendants did not deny this allegation, so the Court must assume that Defendants themselves would not have to pay for Atlantic Maritime's services twice.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' *Motions to Vacate and Dissolve Writs of Sequestration or, Alternatively, for Release of Excess Seizure* **(Rec. Docs. 73, 74, 75, 77, 80)** are **DENIED**.

New Orleans, Louisiana, this 6th day of February, 2026.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE